## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAHL CLIPPER CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>CONAIR CORPORATION AND CONAIR LLC,<br><br>  Defendants. | C.A. No. 23-114-JCG |

### DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION THAT THE COURT DENY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN PART

SMITH KATZENSTEIN & JENKINS LLP
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19899
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

COWAN, LIEBOWITZ & LATMAN, P.C
Eric J. Shimanoff
Mark Montague
114 West 47th Street
New York, NY 10036
(212) 790-9200
ejs@cll.com
mxm@cll.com

*Counsel for Defendants Conair Corporation and Conair LLC*

**TABLE OF CONTENTS**

I.   STANDARD OF REVIEW ...................................................................................................1

II.  FACTUAL BACKGROUND ................................................................................................1

III. ARGUMENT ..........................................................................................................................2

    A.    The Magistrate Judge Erred in Failing To Recommend Dismissal Of Wahl's Trademark Claim Based On The Classic Fair Use Affirmative Defense..................................................................................................2

        1.    The Classic Fair Use Affirmative Defense ....................................................2

        2.    The Magistrate Judge Erred in Refusing to Analyze the Elements of Classic Fair Use on a Motion to Dismiss................................2

            (a)    The Third Circuit Allows Consideration of the Classic Fair Use Affirmative Defense on a Motion to Dismiss......................................................................................2

            (b)    That Classic Fair Use May Have Presented Factual Issues in *Other* Cases Did Not Relieve the Magistrate Judge of Her Duty to Analyze Classic Fair Use in *This* Case .........................................................................5

        3.    The Affirmative Defense of Classic Fair Use Is Apparent from the Face of the Complaint and the Exhibits Attached Thereto ...........................................................................................................7

IV. CONCLUSION....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amerigas Propane, L.P. v. Op. Corp.*,
   2012 U.S. Dist. LEXIS 84679 (E.D. Pa. June 19, 2012) ............................................................5

*Arnold v. ABC, Inc.*,
   2007 U.S. Dist. LEXIS 5802 (S.D.N.Y. Jan. 29, 2007) .....................................................4, 7, 8

*Azoplate Corp. v. Silverlith, Inc.*,
   367 F. Supp. 711 (D. Del. 1973) ...............................................................................................8

*Ball v. Famiglio*,
   726 F.3d 448 (3d Cir. 2013) ......................................................................................................3

*Bell v. Harley Davidson Motor Co.*,
   539 F. Supp. 2d 1249 (S.D. Cal. 2008) .....................................................................................9

*Bethel v. Jendoco Constr. Corp.*,
   570 F.2d 1168 (3d Cir. 1978) ....................................................................................................3

*Bohus v. Restaurant.com, Inc.*,
   784 F.3d 918 (3d Cir. 2015) ......................................................................................................3

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006) ..................................................................................................6, 8

*Century 21 Real Estate Corp. v. Lendingtree, Inc.*,
   425 F.3d 211 (3d Cir. 2005) ......................................................................................................5

*Digit. Dream Labs, LLC v. Living Tech. (Shenzhen) Co.*,
   587 F. Supp. 3d 305 (W.D. Pa. 2022) .......................................................................................5

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   11 F.3d 1460 (9th Cir. 1993) .....................................................................................................4

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
   716 F.3d 764 (3d Cir. 2013) ......................................................................................................3

*Hensley Mfg. v. ProPride, Inc.*,
   579 F.3d 603 (6th Cir. 2009) ........................................................................................3, 4, 6, 7

*Inst. for Sci. Info. v. Gordon & Breach, Sci. Publrs., Inc.*,
   931 F.2d 1002 (3d Cir. 1991) ............................................................................................2, 3, 6

*JBCHoldings NY, LLC v. Pakter*,
   931 F. Supp. 2d 514 (S.D.N.Y. 2013) ............................................................................... 4, 7

*Kassa v. Detroit Metro Convention*,
   150 F. Supp. 3d 831 (E.D. Mich. 2015) ........................................................................ 4, 7, 8

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013) ................................................................................................... 4

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004) .................................................................................................... 2, 6, 9

*Leveto v. Lapina*,
   258 F.3d 156 (3d Cir. 2001) ................................................................................................... 3

*Lupian v. Joseph Cory Holdings LLC*,
   905 F.3d 127 (3d Cir. 2018) ................................................................................................... 3

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
   62 F. Supp. 3d 368 (D. Del. 2014) ......................................................................................... 1

*Mir v. Brod*,
   2022 U.S. Dist. LEXIS 199269 (E.D. Pa. Nov. 2, 2022) ....................................................... 3

*Naked Cowboy v. CBS*,
   844 F. Supp. 2d 510 (S.D.N.Y. 2012) ............................................................................... 4, 10

*Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC*,
   184 F. Supp. 3d 572 (W.D. Ky. 2016) ................................................................................... 4

*Outhouse PR, LLC v. Northstar Travel Media, LLC*,
   2020 U.S. Dist. LEXIS 86351 (S.D.N.Y. May 15, 2020) ............................................. 4, 7, 8

*Pa. State Univ. v. Keystone Alts. LLC*,
   2020 U.S. Dist. LEXIS 38617 (M.D. Pa. Mar. 5, 2020) ........................................................ 5

*Packman v. Chi. Tribune Co.*,
   267 F.3d 628 (7th Cir. 2001) ................................................................................................. 9

*Sorensen v. WD-40 Co.*,
   792 F.3d 712 (7th Cir. 2015) ........................................................................................... 9, 10

*Southeast Clinical Nutrition Ctrs., Inc. v. Mayo Found. for Med. Educ. & Research*,
   135 F. Supp. 3d 1267 (N.D. Ga. 2013) ........................................................................ 4, 7, 8

*THEIA Techs. LLC v. THEIA Grp., Inc.*,
   2021 U.S. Dist. LEXIS 16284 (E.D. Pa. Jan. 27, 2021) ........................................................ 8


*Valley Forge Military Acad. Found. v. Valley Forge Old Guard, Inc.*,
    24 F. Supp. 3d 451 (E.D. Pa. 2014) ...................................................................................5

*W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*,
    984 F.2d 567 (2d Cir. 1993)..............................................................................................9

*Wonder Labs, Inc. v. Procter & Gamble Co.*,
    728 F. Supp. 1058 (S.D.N.Y. 1990)................................................................................10

*Zatarains, Inc. v Oak Grove Smokehouse, Inc.*,
    698 F.2d 786 (5th Cir. 1983) .......................................................................................9, 10

**Statutes**

15 U.S.C. § 1127................................................................................................................9

15 U.S.C. § 1115(b)(4) ..................................................................................................1, 2

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 3

Fed. R. Civ. P. 72................................................................................................................1

Pursuant to Federal Rule of Civil Procedure 72, Defendants Conair Corporation and Conair LLC (collectively, "Conair"), hereby object to the Magistrate Judge's Recommendation that the Court deny Conair's motion to dismiss Plaintiff Wahl Clipper Corporation's ("Wahl") trademark infringement claim (Count III) for failure to state a claim based on the affirmative defense of classic fair use under Lanham Act Section 33(b)(4).[1]  (D.I. 41 at 8-11).

## I. STANDARD OF REVIEW

A District Court reviews *de novo* a magistrate judge's recommendation on a dispositive motion that has been subject to a proper objection.  Fed. R. Civ. P. 72(b)(3); *see also Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 379 (D. Del. 2014).  The District Court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.  Fed. R. Civ. P. 72(b)(3).

## II. FACTUAL BACKGROUND

Wahl alleges that Conair's use of the term "wedge" on certain packaging and webpages (the "Accused Materials"), merely to describe the shape of Conair's BABYLISSPRO® and BARBEROLOGY® branded hair clippers blades, infringes Wahl's trademark rights in Wahl's WEDGE mark.  (D.I. 1, ¶¶ 31-42; D.I. 1-4, Ex. D).  The Accused Materials, attached as Exhibit D to the Complaint, fall into two categories: (1) packaging that uses the term "wedge" in the specifications or "Features & Benefits" section of the product description (the "Accused Packaging") (D.I. 1-4, Ex. D at PageID #34-36); and (2) product webpages that use the term "wedge" in the product description line (*Id.* at PageID #38-39) (the "Accused Webpages").

---

[1] 15 U.S.C. § 1115(b)(4).  Conair disagrees with but does not object at this time to the Magistrate Judge's recommendation that the Court should not dismiss Wahl's claim that Conair has infringed Wahl's U.S. Design Patent D715,491 (Count I).  (D.I. 41 at 3-7, 11)

### III. ARGUMENT

#### A. The Magistrate Judge Erred in Failing To Recommend Dismissal Of Wahl's Trademark Claim Based On The Classic Fair Use Affirmative Defense

##### 1. The Classic Fair Use Affirmative Defense

Trademark law "was [not] meant to deprive commercial speakers of the ordinary utility of descriptive words." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004).  Recognizing "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first," *id.*, Congress codified the common law classic fair use defense in Lanham Act Section 33(b)(4), 15 U.S.C. § 1115(b)(4), which provides that the descriptive fair use of a term is a complete defense to liability for trademark infringement, even for claims involving an incontestable mark. 15 U.S.C. § 1115(b)(4).  The fair use defense allows a junior user to use a term or phrase in good faith, not as a trademark to indicate the source of its goods, but rather to describe its products to the public, irrespective of any trademark rights the senior user may have. *KP Permanent Make-Up*, 543 U.S. at 118.  Fair use is established where a party is using the term: (1) in a descriptive sense; (2) not as a trademark to indicate the source of its goods; and (3) in good faith. *Inst. for Sci. Info. v. Gordon & Breach, Sci. Publrs., Inc.*, 931 F.2d 1002, 1008 (3d Cir. 1991).

##### 2. The Magistrate Judge Erred in Refusing to Analyze the Elements of Classic Fair Use on a Motion to Dismiss

The Magistrate Judge improperly failed to analyze in any manner the three elements of classic fair use.  Instead, the Magistrate Judge erroneously held the classic fair use affirmative defense could not be decided on a motion to dismiss because: (1) the Third Circuit only allows certain affirmative defenses other than fair use to be decided on a motion to dismiss; and (2) fair use generally is too factual an issue to decide on a motion to dismiss.  (D.I. 41 at 8-10).

###### (a) The Third Circuit Allows Consideration of the Classic Fair Use Affirmative Defense on a Motion to Dismiss

The Magistrate Judge erred in finding Third Circuit precedent did not allow consideration of the classic fair use affirmative defense on a motion to dismiss. The Third Circuit long has held that "an affirmative defense may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978); *see also Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130-31 (3d Cir. 2018); *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015); *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013); *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001).

The Third Circuit has never held, as a rule, that only certain affirmative defenses may be raised on a motion to dismiss, let alone that classic fair use cannot be raised on a motion to dismiss. *See Mir v. Brod*, 2022 U.S. Dist. LEXIS 199269, at *42 (E.D. Pa. Nov. 2, 2022) ("When determining whether a claim is plausible, a district court may also consider ***any*** affirmative defenses raised by the moving party") (emphasis added) (citation omitted). That the facts showing the affirmative defense must be apparent from the pleadings is the only limitation to determination of a motion to dismiss based on an affirmative defense. Moreover, the Magistrate Judge's holding is directly contradicted by her own cited case, *Inst. for Sci. Info.*, 931 F.2d at 1008-1010, where Third Circuit allowed the defendant to present and then analyzed (although ultimately denied) a classic fair use defense on a Rule 12(c) motion, whose standards are identical to those under Rule 12(b)(6).

Other Circuits similarly permit, on a motion to dismiss, courts to determine the classic fair use affirmative defense where fair use is evident from the pleadings or can be found as a matter of law. *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) ("Affirmative defenses may be adjudicated [on motion to dismiss] where the facts necessary to establish the defense are evident

on the face of the complaint"); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009) ("defendant may raise the affirmative defense of fair use" on 12(b)(6) motion); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1467 (9th Cir. 1993) (finding "fair use as a matter of law"); *see also Outhouse PR, LLC v. Northstar Travel Media, LLC*, 2020 U.S. Dist. LEXIS 86351, at *8 (S.D.N.Y. May 15, 2020) ("[a]ffirmative defenses may be adjudicated [at a motion to dismiss stage] . . . where the facts necessary to establish the defense are evident on the face of the complaint"); *Kassa v. Detroit Metro Convention*, 150 F. Supp. 3d 831, 840 (E.D. Mich. 2015) ("There is simply no reason not to grant a motion to dismiss where the undisputed facts conclusively establish [fair use] as a matter of law") (internal quotations and citations omitted) (alteration in original); *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 530-31 (S.D.N.Y. 2013) ("Although fair use is an affirmative defense, it is nevertheless appropriate to grant a motion to dismiss … where the alleged conduct is fair use as a matter of law").

Accordingly, many courts have dismissed complaints based on the classic fair use defense. *Hensley Mfg.*, 579 F.3d at 612; *Kassa*, 150 F. Supp. 3d at 840; *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d at 1467; *JBCHoldings NY*, 931 F. Supp. 2d at 530-31; *Outhouse PR*, 2020 U.S. Dist. LEXIS 86351, at *8; *Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC*, 184 F. Supp. 3d 572, 577-80 (W.D. Ky. 2016); *Southeast Clinical Nutrition Ctrs., Inc. v. Mayo Found. for Med. Educ. & Research*, 135 F. Supp. 3d 1267, 1275 (N.D. Ga. 2013); *Arnold v. ABC, Inc.*, 2007 U.S. Dist. LEXIS 5802, at *6 (S.D.N.Y. Jan. 29, 2007); *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 514-16 (S.D.N.Y. 2012). That Conair's defense is one of classic fair use (as opposed to statute of limitations or other defenses) in and of itself is not an impediment to the Court's consideration thereof.

        (b)        **That Classic Fair Use May Have Presented Factual Issues in *Other* Cases Did Not Relieve the Magistrate Judge of Her Duty to Analyze Classic Fair Use in *This* Case**

The Magistrate Judge's finding that classic fair use ***generally*** cannot be resolved on a motion to dismiss because the issue is factual in nature: (1) mistakenly relied on cases concerning the different issue of ***nominative*** fair use; and (2) has no bearing on this case, where the Magistrate Judge ***did not even attempt to analyze*** whether the elements of fair use were apparent from the pleadings. (D.I. 41 at 8-10).[2]

In support of her finding that classic fair use "raises issues of fact which generally cannot be resolved on the pleadings," the Magistrate Judge relied primarily on *Digit. Dream Labs, LLC v. Living Tech. (Shenzhen) Co.*, 587 F. Supp. 3d 305, 325 (W.D. Pa. 2022); *Pa. State Univ. v. Keystone Alts. LLC*, 2020 U.S. Dist. LEXIS 38617, at *7-8 (M.D. Pa. Mar. 5, 2020); *Valley Forge Military Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 458 (E.D. Pa. 2014); and *Amerigas Propane, L.P. v. Op. Corp.*, 2012 U.S. Dist. LEXIS 84679, at *19 (E.D. Pa. June 19, 2012). (D.I. 41 at 9-10). However, each of these cases dealt with the different issue of ***nominative*** fair use, a defense that applies when the defendant is using the plaintiff's mark to describe the plaintiff and the plaintiff's services. *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 214, 220 (3d Cir. 2005). Classic fair use, at issue here, applies when the defendant uses a term other than as a mark to describe its own services. *Id*. Unlike classic fair use, in the Third Circuit, the nominative fair use defense first requires an analysis of ***likely confusion***, *see id.* at 222, which some courts have held is a factual determination generally,

---

[2] The Magistrate Judge also misstates that Conair does not challenge the sufficiency of Wahl's pleadings. (D.I. 41 at 8) To the contrary, it is the very lack of plausibility of Wahl's trademark infringement claim, as shown by the very exhibits attached to the Complaint that clearly bear out the classic fair use affirmative defense, that forms the basis of Conair's motion to dismiss.

although not always, inappropriate on a motion to dismiss. *Hensley Mfg.*, 579 F.3d at 613.  Classic fair use, on the other hand, is a complete defense to trademark infringement irrespective of likely confusion, and thus does not require any likely confusion analysis or raise any inherent factual issues associated therewith. *KP Permanent Make-Up*, 543 U.S. at 122.

In any event, that a few courts have found factual issues precluded dismissal based on classic fair use in other cases has no bearing on whether fair use exists in this case.  Nor do any alleged generalities concerning classic fair use relieve the Magistrate Judge of her obligation to analyze and to determine whether fair use exists here with respect to the specific allegations in the Complaint, including the Accused Materials attached thereto.  (D.I. 1-4, Ex. D).  Indeed, in the very case cited by the Magistrate Judge, the district court and the Third Circuit specifically analyzed the allegations in the complaint to determine whether fair use was borne out by the pleadings. *Inst. for Sci. Info.*, 931 F.2d at 1008-1010.

Instead of analyzing the pleadings, the Magistrate Judge assumed factual issues exist merely because Conair devoted ten pages of briefing to the issue.  (D.I. 41 at 9 (citing D.I. 10 at 15-25))  "But mere speculation is insufficient" to show the complaint should not be dismissed based on classic fair use. *Hensley Mfg.*, 579 F.3d at 613.  This portion of Conair's opening brief set forth the well-settled principles of law concerning each element of fair use and explained in detail why the defense was evident from the face of the Complaint.  (D.I. 10 at 15-25)  In its brief, Conair analyzed in detail Exhibit D to the Complaint, which contains the Accused Materials.  (*Id.*)  The exhibits to the Complaint form part of the pleading just as much as the written allegations therein. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Indeed, a defendant's use of the term at issue in context (as shown here in the Accused Materials) is one of the most important considerations in the classic fair use analysis.  It alone can

show all three elements. *Hensley Mfg.*, 579 F.3d at 612 (defendant's advertisements); *Kassa*, 150 F. Supp. 3d at ("language on the banners and signs"); *Arnold*, 2007 U.S. Dist. LEXIS 5802, at *6 (advertisements and website); *JBCHoldings NY*, 931 F. Supp. 2d at 531 (email); *Outhouse PR*, 2020 U.S. Dist. LEXIS 86351, at *12-14 ("articles at issue" and "website"); *Southeast Clinical Nutrition Ctrs.,* 135 F. Supp. 3d at 1275 (diet publications). Yet, the Magistrate Judge improperly refused to conduct any analysis of the Accused Materials and thus had no basis upon which to speculate that factual issues would preclude dismissal.

### 3. The Affirmative Defense of Classic Fair Use Is Apparent from the Face of the Complaint and the Exhibits Attached Thereto

Had the Magistrate Judge analyzed the allegations in the Complaint, including the Accused Materials attached thereto, as set forth in Conair's briefs (D.I. 10 at 15-25; D.I. 19 at 11-15), she would have concluded that all three elements of classic fair use were present here.

*First*, the Complaint (D.I. 1) and the Accused Materials (D.I. 1-4, Ex. D) show that Conair used the term "wedge" to describe the shape of its clipper blades. It is irrefutable that "wedge" describes the shape of an object having one thick end and tapering to a thin edge. Not only is this descriptive meaning well-defined in dictionaries and borne by common sense, but Plaintiffs' written allegations show that "wedge" connotes a universally recognized shape and style, including in connection with clippers and blades. (D.I. 1, ¶ 41) For example, Plaintiff admits that "wedge-shaped" and "wedge-style" (including as the latter is used by Conair) are descriptive terms and suggests no synonym for "wedge." (*Id.*) The Complaint also references an industry podcast host who uses "wedge" to describe the style and attributes of a clipper blade. (*Id.*, ¶ 33) Consistent with this well-defined meaning, the Accused Materials show Conair used the term "wedge" to describe the shape of its clipper blades, which have one thick end and taper to a thin edge. (D.I. 1-4, Ex. D) In the Accused Packaging, the term "wedge" is listed in the specifications or "Features

& Benefits" sections, appearing only as part of the full phrase "graphite wedge blade – zero gap adjustable," which clearly describes several features of the blade for the clippers, including its shape, construction material and adjustability.  (*Id.* at PageID #36)  The phrase is listed in bullet points with other descriptive features of the blade for the clippers, such as "high-torque brushless motor," "dual voltage," "and "ergonomic grip housing."  (*Id.*)  The Accused Packaging also prominently features a photo of the clippers, showing the blade is shaped like a wedge.  In the Accused Webpages, the term "wedge" appears only as part of either the full phrase "Replacement Graphite Wedge Blade" or "Gold Wedge Replacement Blade," which terms describe the color, shape and functionality of the blade.  (*Id.* at PageID #38)  As made clear from the face of the Accused Materials, Conair merely used the term "wedge" to describe the shape of its hair clippers' blade that has one thicker end and tapers to a thin edge, consistent with the term's ordinary meaning.[3]

---

[3] The Magistrate Judge took issue with Conair's submission of a handful of documents outside the Complaint, including dictionary definitions of the term "wedge," the prosecution history of Wahl's trademark application for WEDGE, during which the USPTO initially found the moniker to be descriptive, and industry publications showing third parties using the term wedge descriptively in a manner similar to Conair.  (D.I. 41 at 8, 9)  This finding is directly at odds with Third Circuit precedent that permits the court to take judicial notice of certain facts on a motion to dismiss. *Buck*, 452 F.3d at 260.  At minimum, the Magistrate Judge should have considered by judicial notice well-settled and uniform dictionary definitions of the term "wedge," *Azoplate Corp. v. Silverlith, Inc.*, 367 F. Supp. 711, 731 (D. Del. 1973); *Outhouse PR*, 2020 U.S. Dist. LEXIS 86351, at *14-15, as well as the USPTO's office action.  *THEIA Techs. LLC v. THEIA Grp., Inc.*, 2021 U.S. Dist. LEXIS 16284, at *22 (E.D. Pa. Jan. 27, 2021).  In any event, the Magistrate Judge need not have relied on any extrinsic materials for the definition of "wedge."  Other courts readily have determined a term or phrase was descriptive on a motion to dismiss simply analyzing the content in which the term or phrase appears, and without formal citation to dictionary definitions.  *See Kassa*, 150 F. Supp. 3d at 838 (analyzing banners and signs to determine "Welcome to the D" was descriptively used as a greeting to the city of Detroit); *Arnold*, 2007 U.S. Dist. LEXIS 5802, at *9 (analyzing accused ad and website to determine "What's Your Problem" described that defendant's television show was about fictional lawyers); *Southeast Clinical Nutrition Ctrs.*, 135 F. Supp. 3d at 1277 (analyzing diet publications to determine phrases "Lose It!" and "Live It!" were used descriptively about content of publications).  Similarly, here, as discussed above, the

*Second*, the Accused Materials show that Conair did not use "wedge" as a trademark. Trademarks serve as indicators of the *source* of goods and services. *KP Permanent Make-Up*, 543 U.S. at 115 n.2 (citing 15 U.S.C. § 1127). Here, the Accused Materials call no special attention to "wedge," which never was presented as a stand-alone term, and which was always presented in the same font, size and color as other text merely describing features of the clippers, such as "gold," "high performance," "cordless," "dual voltage" and "lithium ion battery." *See Sorensen v WD-40 Co.*, 792 F.3d 712, 724 (7th Cir. 2015) ("Due to the word's small size, plain color, and non-privileged placement on the bottle, we find that 'inhibitor' is not an 'attention-getting symbol,' and does not function as a source indicator") (internal citation omitted). Similarly, the Accused Materials prominently displayed Conair's own well-known registered BaBylissPRO® and BARBERology® marks, often followed by a registration (®) symbol, to indicate the source of the products. *See Packman v. Chi. Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001) ("the Tribune's distinctive masthead, which appears prominently on the front page and on each piece of memorabilia containing the phrase, identifies the source of the products"). Nor did the Accused Materials use any indicia, such as a ™, ℠ or ® symbol, to claim any trademark rights in "wedge." *See Zatarains v Oak Smokehouse, Inc.*, 698 F.2d 786, 796 (5th Cir. 1983).

*Third*, the Accused Materials show that Conair used the term "wedge" in good faith and not with any intent to mislead consumers and to cause confusion, because the Accused Materials: (1) used a term that reflects a characteristic of Comair's clipper blade, *see W.W.W. Pharm. Co., Inc. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993) ("Gillette selected a name which matched the image it was trying to project as well as the shape of the product"); (2) prominently featured

---

meaning of the term "wedge" is self-evident from how the term was used in the Accused Materials as well as from Wahl's written allegations in the Complaint.

Conair's own trademarks in connection with the products, *see Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1258-59 (S.D. Cal. 2008) ("Harley-Davidson demonstrated its intent not to create confusion by including the Harley-Davidson name or bar-&-shield logo on every advertisement and piece of merchandise bearing the 'Ride Hard' phrase"); and (3) did not use any other indicia associated with Wahl, such as Wahl's logos, trade dress, stylizations or other marks. *See Zatarains*, 698 F.2d at 796 (defendants "labeled their products in such a way as to minimize any potential confusion"). Bad faith cannot be inferred merely because, as alleged by Wahl, Conair had prior knowledge of Wahl's trademark rights. *See Sorensen*, 792 F.3d at 725 ("WD-40's mere knowledge of Sorensen's mark, however, is insufficient to establish that WD-40 acted in bad faith"). Similarly, Wahl's allegation that Conair refused to stop using "wedge" after receiving Wahl's demand letter "is absolutely no proof that the defendant[s] acted in bad faith to capitalize on the plaintiff's trademark." *Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F. Supp. 1058, 1064 (S.D.N.Y. 1990). Wahl's attempts to show bad faith by citing to Conair's statements made during an industry podcast fare no better. These statements clearly show Conair used the term "wedge" merely to describe the shape and style of its clipper blade. Wahl's bald allegations that Conair intended to cause confusion and to benefit from Wahl's goodwill (D.I. 1, ¶¶ 35-36), merely recite the elements of the classic fair use defense and fail to meet the standard for plausibility. *See Naked Cowboy*, 844 F. Supp. 2d at 516 ("Besides conclusory allegations, the Complaint alleges no set of facts which, if true, would lead to the conclusion that CBS sought to gain advantage by associating its television program with the Naked Cowboy").

## IV.   CONCLUSION

For the foregoing reasons, and for those set forth in Conair's motion briefing (D.I. 10 at 15-25; D.I. 19 at 7, 11-15), the Court should dismiss Wahl's claim for trademark infringement (Count III) based on the affirmative defense of classic fair use.

| | |
|---|---|
| Dated: December 4, 2023 | Respectfully submitted, |
| *Of Counsel:*<br>Eric J. Shimanoff<br>Mark Montague<br>COWAN, LIEBOWITZ & LATMAN, P.C.<br>114 West 47th Street<br>New York, NY 10036<br>(973) 998-7722<br>ejs@cll.com<br>mxm@cll.com | SMITH KATZENSTEIN & JENKINS LLP<br><br>*/s/ Daniel A. Taylor*<br>Neal C. Belgam (No. 2721)<br>Daniel A. Taylor (No. 6934)<br>1000 West Street, Suite 1501<br>Wilmington, DE 19801<br>(302) 652-8400<br>nbelgam@skjlaw.com<br>dtaylor@skjlaw.com<br><br>*Counsel for Defendants Conair Corporation and Conair LLC* |